63   521
138a  318

JOHN E. BLACKMAN, Appellant, *v.* CHARLES RILEY, Respondent.

*Deeds — proof of execution in* 1759.

A deed, executed in 1759, which was not acknowledged by the grantor or proved by the subscribing witnesses, had attached to it an affidavit of the scrivener that he saw the grantor execute the deed, and that he saw the witnesses sign it in the presence of the grantor. This affidavit was taken before one Smith, described as one of his majesty's counsel for the Province of New York. There was a further certificate by Smith that the affiant had made the affidavit before him that he had examined the deed and allowed it to be recorded and take effect as the law required.

*Held,* that the proof of the execution of the deed was insufficient to allow it to be recorded or to be read in evidence.

The requisites in 1759 of a sufficient proof of the execution of a deed, stated.

Appeal by the plaintiff, John E. Blackman, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 2d day of September, 1891, dismissing the complaint upon the merits, with costs, after a trial before a referee.

*E. Haldane,* for the appellant.

*H. H. Anderson,* for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover possession of a parcel of land on the north-east corner of Fifty-third street and Broadway, in the city of New York. It was, prior to 1869, in the Bloomingdale road, which was discontinued and closed as a street by proceedings taken in that year; and shortly thereafter one Adolph Rusch, through whom the defendant claims title, went into possession of the same, it abutting upon land belonging to him, and the said Rusch and his grantees have ever since remained in possession of the same, and the defendant is now in such possession. The plaintiff's claim of title to the premises in question depends upon an alleged deed dated the 23d of April, 1759, executed by Cornelius Cosine to his son, Cornelius Cosine, Jr., and Balin Johnson Cosine. This deed was attempted to be proved by the production of a record from the office of the register of the county of New York, and also by a certified copy of such record.

It appears from the records of conveyances in said register's office, and from a certified copy from such records, that on the 10th of December, 1761, in Liber 30 of Conveyances, there was recorded a paper which purported to have been executed by said Cornelius Cosine. This instrument purported to have been signed, sealed and delivered in the presence of two subscribing witnesses, and the only proof of its execution was an affidavit attached thereto as follows:

"CITY OF NEW YORK, *ss.:*

"Thomas Clement, of the city of New York, scrivener, maketh oath that he wrote the within instrument as a clerk, and was present and saw the within-named Cornelius Cosine, Senr., sign, seal and deliver the within instrument as his act and deed for the uses therein mentioned; and that he saw at the same time the within-named Nathaniel Holmes and Henry Green sign their names as witnesses thereto in the presence of the said Cornelius Cosine, and also of this deponent, and further this deponent saith not.

                                        " THOS. CLEMENT.

" Sworn the 9th day of Decem- ⎫
    ber, 1761, before me,    ⎬

                    " WM. SMITH."

Then follows a certificate, signed by said Smith, as follows.:

"Be it remembered that on the ninth day of December, in the year of our Lord one thousand seven hundred and sixty-one, personally appeared before me William Smith, Esq., one of his Majesty's Council for the Province of New York, the above-named Thomas Clement, of the city of New York, scrivener, and made the affidavit above mentioned, and I having perused the within written instrument, and finding therein no erasures or interlineations, do allow the same to be recorded and to take effect as the law requires.

"WM. SMITH."

The referee excluded this record upon the ground that the deed of which it purported to be a copy had never been executed so as to entitle it to be recorded, and such record to be admitted in evidence.

The only statute which appears to have been in existence in respect to the effect of the record of deeds, conveyances and writings relating to the title or property in lands at the time of the date and record of the alleged deed in question, seems to be section 4 of an act passed by the governor, council and assembly of the Colony of New York on the 30th of October, 1710, which section reads as follows: "That all and every deed or deeds, conveyance or conveyances and writings relating to the title or property of any lands, messuages, tenements or hereditaments within this colony which have been already or shall be hereafter executed, being duly acknowledged and recorded in the secretary's office of the said colony or in the county records where such lands are situate and being; such deed or writing so recorded or transcript thereof, shall be good and effectual evidence in any court of record within this colony to all intents and purposes as if the original deed or deeds, conveyance or conveyances and writings was or were produced and proved in court."

The language of this section seems to refer entirely to instruments whose execution had been directly acknowledged by the grantor; but it would appear that by judicial extension the section was made to apply to conveyances which had been duly recorded, whether their execution by the grantors had been proved or acknowledged. (*Hunt* v. *Johnson*, 19 N. Y., 279; *Van Cortlandt* v. *Tozer*, 17 Wend., 338.)

The question then raised is as to how, at the time of the alleged execution of this instrument, a deed could be proved so as to entitle it to record. It has been stated in the case of *Doe* v. *Roe* (1 Johns. Cas., 402), although the question was not properly up for adjudication, that a certified copy of this alleged record was neither a record nor a copy of a deed. It is urged, upon the part of the appellant, that this adjudication, however, cannot prevail in consequence of what subsequently transpired in the litigations between the parties upon the question of the title to this property.

But we think that a decision of the question involved need not be based upon any such authority, as the fact that the execution of conveyances could only be established by acknowledgment of the grantors or proof made by one of the subscribing witnesses before certain officers, seems to be recognized by legislation and decision. On the 16th of February, 1771, an act was passed to confirm certain ancient conveyances, and directing the manner of proving deeds to be recorded. It must be borne in mind that up to this time there had been no legislation, except the act above referred to of 1710, giving any effect to the record of a deed. The act of 1771 commenced with the following preamble:

"Whereas, it has been an ancient practice in this colony to record deeds concerning real estates, upon the previous acknowledgment of the grantors or proof made by one of the subscribing witnesses of the execution of the instruments before a member of his Majesty's Council, a Judge of the Supreme or County Court, or a Master in Chancery, and sometimes before a Justice of the Peace, * * * the purchasers whereof, and those holding under them, ought to be secured, both in law and equity, against the respective grantors, their heirs and assigns."

And the fourth section of the act reads as follows: "That no conveyance of lands, executed after the publication hereof, shall be recorded in any of the public offices, unless the same be duly acknowledged by the grantor, or proved by one of the subscribing witnesses; and if the grantor and witnesses be dead, without proof of the handwriting of the grantor or grantors, or one of the witnesses, before one of his Majesty's Council, a Judge of the Supreme Court, a Master in Chancery, or one of the judges of the inferior court, other than Mayor's Courts, for the county where the lands

granted · lay, who are hereby declared to have lawful authority to take the same in the manner which hath been anciently and constantly used ; a certificate of which acknowledgment or proof is to be indorsed on the deed of conveyance."

It will be seen, upon a consideration of this preamble, that the only ancient practice in the colony referred to was that of recording deeds upon the previous acknowledgment of the grantors, or proof made by one of the subscribing witnesses to the execution of the instrument before certain officers, and that in the opinion of the legislative body it would seem there was no legislative authority up to this time, even for the record of such instruments, undoubtedly referring to those which were proved and not directly acknowledged, because the stated purpose of the legislation was to secure persons holding under such deeds against any claim which the grantors under such deeds, or their heirs or assigns, might make.

This view is reinforced by the observations of the chancellor in *Van Cortlandt* v. *Tozer* (20 Wend., 428), in which he remarked as follows : Although the act of 1710 speaks only of deeds duly · acknowledged, the recital in the act of 1771 shows that the practical construction of the former act had been to allow deeds to be recorded which had been duly proved by a subscribing witness as well as those which had been actually acknowledged by the grantor in person.

It certainly could not have been the practice to permit deeds of real estate to be offered in evidence upon slighter proof than obtained in respect to other sealed instruments, and the rule in respect to the necessity of the production of the subscribing witness, where there was one to a sealed instrument, in order that it might be received in evidence, is spoken of in decisions made as early as 1808 as a long settled and familiar rule.

In the case of *Fox* v. *Reil* (3 Johns., 477) it was held in 1808 that where there is a subscribing witness to a bond, proof of confession by the obligor is not sufficient, but the witness must be produced, or in case he is dead or out of the State, his handwriting must be proved, Chief Justice KENT stating the rule to be as follows : " Here we are certainly concluded by an ancient and uniform rule, that when the defendant has not acknowledged his deed before a competent public officer, or has not expressly agreed to admit it in evidence upon the trial, but has put himself upon his plea of *non est*

*factum,* the plaintiff must produce the subscribing witness and give the defendant the benefit of an investigation of the circumstances attending the execution of the deed."

The same rule was applied in the case of *Henry* v. *Bishop* (2 Wend., 576), where it was attempted to prove the execution of a sealed instrument by the testimony of a person who was present at the execution of the paper, and saw the other witness sign it, but did not subscribe his own name as a witness until the case had been called for trial.

It is true that this decision was made as late as the year 1827, but still it recognizes the rule which was stated by Chief Justice KENT in 1808 to have long prevailed.

It cannot be that a record of an instrument can be admitted in evidence where the execution of the instrument upon the face of the record appears to have been proved in a manner, which, if the original instrument had been produced, would have excluded it from evidence. And the fact that this was the method in which the execution of sealed instruments could be proved is recognized by the act of February 26, 1788 (chap. 44), which is as follows:

"All and every deed and deeds, conveyance and conveyances and writings whatsoever relating to the title or property of any messuages, lands, tenements or hereditaments within this State heretofore executed, or hereafter to be executed, being duly acknowledged by the party or parties executing the same, or duly proved by one or more of the subscribing witnesses to the execution thereof, and recorded * * * in the office of the clerk of the county in which such lands are situated, shall and may be read as evidence in any court in this State, without further or other proof of the execution thereof, and the record thereof, or a transcript of the same, shall and may be given and received in evidence."

On the 29th of January, 1811, an act (chap. 1) was passed, the first section of which is in the following words : " The record of any conveyance relating to any lands or tenements within this State, executed previous to the 4th of July, in the year 1776, and acknowledged or proven according to law, and recorded in the office of the clerk of any of the counties within the late Colony of New York, or a sworn copy of such record, shall be evidence in any court of law or equity in the same manner as the original conveyance would be if produced

and proven." This language was substantially incorporated in the revision of the laws of the State of New York, made in 1813 (chap. 97, § 6). "A copy of such record, certified by any such clerk" being substituted for the words "A sworn copy of such record."

It is suggested by the learned counsel for the appellant that the change of language in the act of 1813 from that contained in the statute of 1788 was unnecessary, if the act of 1813 only authorizes proof by subscribing witnesses. But it will be observed that the act of 1811, which was incorporated in the act of 1813, was passed for an entirely different purpose than that suggested. It was for the purpose of validating the record of deeds of lands which had not been recorded in the office of the clerk of the county in which such lands were situated; which seems to have been a practice which had grown up, and which was not distinctly recognized by any of the statutes theretofore passed.

But even if this were not so, the legislation cannot be held to have authorized the introduction in evidence of the record of instruments, which, if the instruments themselves had been produced, proven in the manner specified in the record, they could not have been offered in evidence. The language of the statute is, "proven according to law," and the most liberal interpretation of this language could only extend it to the case of instruments which had been proven according to a usage which, by its long continuance, had obtained the sanctity of law.

None of the cases cited by the learned counsel for the appellant seem to militate against the views hereinbefore expressed. In the case of *Jackson ex dem. Hardenberg* v. *Schoonmaker* (2 Johns. Rep., 230), decided in 1807, the validity of the deed was established by an acknowledgment before a proper officer by one of the grantors, all of whom were trustees, and he the only survivor.

In the case of *Jackson ex dem. Woodruff* v. *Gilchrist* (15 Johns., 89), the deed was duly acknowledged, but the grantor being a *feme covert*, it was claimed to be void because the certificate did not contain a statement that a private examination of the wife had been made; and it was held in favor of a party who had been long in possession, that as at the time the acknowledgment was taken, there was no act requiring the fact of this private examination to be

stated in the certificate of acknowledgment, it might be presumed to have been made after such a lapse of time.

Attention is called to the language of the chancellor in the case of *Van Cortlandt* v. *Toser* (20 Wend., 428). But it will be observed that that language was used in respect to a deed which had been proved by a subscribing witness, and thus, under the ordinary rules of evidence, entitled to be received.

Our attention has been called to no adjudication in respect to the admission of copies of the records of deeds which can form any basis for the receipt in evidence of the record in question. The discussion has chiefly arisen upon the question whether, prior to certain dates, the records of deeds proven by subscribing witnesses could be received in evidence; and throughout the discussion it seems to have been conceded that the rule was imperative that a deed or instrument under seal to be received in evidence must be acknowledged by at least one of the parties to the instrument, the others being dead, or proven by a subscribing witness. And in more than one case has it been held that the evidence of a party who claims to have been standing by, at the time of the execution of the instrument, was not sufficient to prove the same without proof of the death of, or inability to procure, the subscribing witness.

It seems to us, therefore, upon an examination of the statutes and decisions interpreting the practice and usages existing at the time of the execution of the deed in question, although such practice was exceedingly loose and varied, that the title of a party in possession should never be disturbed by the introduction of the record of an instrument which has not been proved in the manner apparently recognized by the practice prevailing at the time of its execution.

The judgment should be affirmed, with costs.

Patterson, J., concurred; O'Brien, J., concurred in the result.

Judgment affirmed, with costs.