PEOPLE ex rel. ERIE R. R. CO. *v.* BD. R. R. COMRS.    273

App. Div.]        THIRD DEPARTMENT, MAY, 1905.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. ERIE RAILROAD COMPANY, Relator, *v.* THE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF NEW YORK and Others, Being Members Thereof, and INTERVALE TRACTION COMPANY, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE R. CONKLIN and Others, Relators, *v.* THE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF NEW YORK and Others, Being Members Thereof, and INTERVALE TRACTION COMPANY, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY M. LEONARD and Others, Relators, *v.* THE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF NEW YORK and Others, Being Members Thereof, and INTERVALE TRACTION COMPANY, Respondents.

*Certificate of public convenience and a necessity — it will not be granted to a railroad company whose incorporation is invalid — one incorporator cannot, as a notary, take the acknowledgment of other incorporators.*

The Board of Railroad Commissioners has no power to grant a certificate of public convenience and a necessity under section 59 of the Railroad Law (Laws of 1890, chap. 565, added by Laws of 1892, chap. 676, and amd. by Laws of 1895, chap. 545) to a railroad company whose certificate of incorporation is not valid and sufficient.

An incorporator of a railroad company has no power, in his capacity as a notary public, to take the acknowledgment of another incorporator to the certificate of incorporation, and an acknowledgment so taken is a nullity.

THREE writs of certiorari issued out of the Supreme Court and attested in the first proceeding on the 7th day of April, 1904, and in the other two proceedings on the 13th day of April, 1904, directed to the Board of Railroad Commissioners of the State of New York and others, being the members thereof, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in granting to the Intervale Traction Company a certificate of public convenience and a necessity under section 59 of the Railroad Law.

On the 4th day of June, 1904, the Intervale Traction Company was granted leave to appear as a party defendant in the proceedings, and by stipulation but one return was made by the Board

274   PEOPLE ex rel. ERIE R. R. CO. *v.* BD. R. R. COMRS.

THIRD DEPARTMENT, MAY, 1905.          [Vol. 105.

of Railroad Commissioners and the three proceedings were heard together.

*Henry Bacon*, *L. W. Y. McCroskery* and *W. H. Wyker*, for the relators.

*Louis W. Stotesbury* and *Graham Witschief*, for the respondent Intervale Traction Company.

CHASE, J.:

On an application to the Board of Railroad Commissioners by an alleged railroad corporation for a certificate of public convenience and a necessity under section 59 of the Railroad Law (Laws of 1890, chap. 565, added by Laws of 1892, chap. 676, and amd. by Laws of 1895, chap. 545) it is the duty of the Board of Railroad Commissioners to make inquiry into the prior proceedings of the alleged railroad company to ascertain and determine whether such alleged railroad company is of a character which the law recognizes, and to which it contemplated that a certificate should be given. (*People ex rel. Long Island R. R. Co.* v. *Board of R. R. Comrs.*, 75 App. Div. 106; *Matter of Kings, Queens & Suffolk R. R. Co.*, 6 id. 241.)

A valid and sufficient certificate of incorporation of the Intervale Traction Company lies at the very foundation of its right to make the application to the Board of Railroad Commissioners. The certificate of incorporation must have been executed and acknowledged by fifteen or more persons and filed as provided by statute. (*People ex rel. Long Island R. R. Co.* v. *Board of R. R. Comrs.*, *supra.*) If not so executed and acknowledged, the determination of the Board of Railroad Commissioners must be reversed. (*People ex rel. Long Island R. R. Co.* v. *Board of R. R. Comrs.*, *supra.*) The certificate of incorporation of said company was signed by sixteen persons. Concededly, ten of such persons duly acknowledged the same. The claimed acknowledgment of three of the other six persons signing said certificate of incorporation is included in a certificate, as follows: " On this 6th day of January, 1902, before me, the subscriber, personally came Charles A. Burt and Albert S. De Vean, and on this 7th day of January, 1902, before me personally came Frank W. Harrington, and on this 14th

PEOPLE ex rel. ERIE R. R. CO. *v.* BD. R. R. COMRS.   275

App. Div.]          Third Department, May, 1905.

day of January, 1902, before me personally came Charles D. Hobbs
and Charles W. Griffith, each to me known and known to me to be
the persons described in and who executed the foregoing certificate
for the purposes therein set forth, and they severally duly acknowl-
edged to me that they executed the same."

Said Albert S. De Vean and Frank W. Harrington, so named in
such certificate of acknowledgment, are in no way named in the cer-
tificate of incorporation, and they did not, nor did either of them,
sign the same.   The certificate shows that the notary acted three
times, and each time on a different day.   We do not see how his
acts and certificate could have been inadvertent.   Whether said
certificate was a part of some other instrument and wrongfully
annexed to the certificate of incorporation, or whether by some
unexplained mistake the notary certified to acknowledgments never
taken by him does not appear, but there is a yet more serious
trouble arising from the fact that the acknowledgments of the
remaining three persons who signed said certificate of incorpora-
tion were taken before one of the other of said sixteen persons sign-
ing the same, which person signed the certificates of acknowledg-
ment as a notary.

The notary so taking the acknowledgment of three of his fellow-
incorporators was one of the members of a committee of incorpora-
tors, acting as its treasurer and was subsequently elected treasurer of
the alleged corporation.

The relators contend that the certificate of incorporation is insuffi-
cient in law to create a corporation by reason of the fact that fif-
teen or more persons did not *duly* acknowledge such certificate
(See Railroad Law, § 2, as amd. by Laws of 1892, chap. 676.)   If
the acknowledgment of three of the persons who signed said cer-
tificate of incorporation taken before one of the others so signing
the same is a *nullity*, the contention of the relators must prevail.

It was held by this court in the case of *Armstrong* v. *Combs* (15
App. Div. 246) that a party to the record is disqualified from taking
an acknowledgment of an instrument.   In that case one of the
members of a partnership took the acknowledgment of the grantor
to an assignment of a mortgage to the partnership in its firm
name, and this court then said : "The object of acknowledgment
and record is to make title secure and prevent frauds in convey-

ancing as well as to furnish proof of the due execution of convey-ances. A history of the practice on that subject in this State will be found in *Van Cortlandt* v. *Tozer* (17 Wend. 338). The early acts will be found in 3 Revised Statutes (1st ed.), appendix, 5–46. It is very plain that when the right to acknowledge was provided for, it was not contemplated that the officer could be one of the par-ties to the instrument. The object of the act and the manner in which it was required to be done were utterly inconsistent with such an idea. A good deal of the formality has since disappeared, but the object remains, and the law should be construed in the light of its original object and scope. The statute does not in terms say that a grantee may or may not be the acknowledging officer. It should not be deemed to give that right without an express pro-vision to that effect. ' A thing within the letter is not within the statute if contrary to the intention of it.' (*People* v. *Utica Ins. Co.*, 15 Johns. 358; *Riggs* v. *Palmer*, 115 N. Y. 506; Smith's Comm. on State Const. Law, § 701.*)

"It should be held, I think, that the acknowledgment before one of the assignees was a nullity. He was a party to the record, and, therefore, disqualified."

In that case it was stated that in other States it is quite uniformly held that an acknowledgment by the grantor taken before the grantee is a nullity, and many authorities are cited and many other authorities could be cited to the same effect.

If three of the sixteen persons signing the certificate of incor-poration could duly acknowledge the same before one of the other persons signing such certificate, then the acknowledgment of all the signers could have been taken before fellow-incorporators, and the execution of the certificate of incorporation would be wholly apart from the official act of any disinterested person and its execu-tion would be but little more sacred than if the acknowledgments were wholly omitted.

A person authorized to take acknowledgments could as a grantee forge the name of the grantor, and add thereto in his official capacity a certificate of acknowledgment and then have such fraudulent instrument of conveyance recorded.

---

* Smith Stat. & Const. Law (§ 701).— [REP.

So, too, such person being the owner with others as tenants in common of property, could sign for himself and acknowledge a conveyance, and then forge the signature of the other owners and add thereto in his official capacity a certificate of acknowledgment as to them, and deliver such conveyance to a grantee and perhaps secure the proceeds of such fraudulent conveyance. The immediate results of a fraud committed by a cograntor might be greater than in the case of a fraud committed by a grantee. In a certificate of incorporation or other paper where an acknowledgment of the parties signing the same is necessary, a fraud could be committed by one of the signers by a false certificate of acknowledgment of persons actually signing the certificate or instrument, or by the forgery of some of the names, and a certificate of acknowledgment as to such forged names, and although it might be difficult to obtain much practical benefit from such fraud in a certificate of incorporation before the same could be discovered, yet as the Legislature has seen fit to make the certificate of incorporation dependent on its being signed by a specific number of persons, and on its being duly acknowledged by them, I can see no distinction or reason that requires that an acknowledgment of a grantor taken by a grantee shall be held a nullity, and that would permit or uphold an acknowledgment taken by one of several grantors of a conveyance or one of several signers of an instrument in which all are interested. Because of the probative force accorded to the certificate of acknowledgment, as well as the usually important consequences of the instrument itself, public policy forbids that the act of taking and certifying the acknowledgment should be exercised by a person financially or beneficially interested in the transaction. (1 Cyc. 553.)

It is a general rule that an officer who is a party to a conveyance or interested therein may not take the acknowledgment of the grantor, and an acknowledgment so taken would be a nullity so far as third persons are concerned. (1 Am. & Eng. Ency. of Law [2d ed.], 493.)

We are not aware of any authority in this or other States upholding an acknowledgment taken by a person *financially or beneficially interested in and a party to* the conveyance or instrument of which it is a part. (See 1 Cent. Dig. 868, and subsequent Am.

Dig. Annuals.) All of the signers of a certificate of incorporation have a very material financial. and other interest in upholding the certificate. The purpose of an acknowledgment is to require greater formality in the execution of an instrument, and not only by requiring greater formality, but by thus obtaining an official act of a disinterested person, prevent, so far as possible, the perpetration of fraud.

It is unnecessary to consider the other serious objections raised by the relators, as it is assumed that if the promoters of the proposed railroad commence *de novo,* that they will be more deliberate and careful in their proceedings.

The determination of the Board of Railroad Commissioners should be reversed.

All concurred.

Determination of the Railroad Commissioners reversed, without costs.